UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
................................................................ x
CRAIG R. NAZZARO and RICHARD DORAN,  :              05 Civ. 2172 (CSH)
                                    :
            Plaintiffs,          :
                                      :
          -against-          :        MEMORANDUM OPINION
                                    :          AND ORDER
SCOTT BALBER, Esq., KELLY & BALBER,      :
LLP, THE KELLY GROUP P.C., (Successor-in-   :
interest to Kelly & Balber, P.C.) and JOHN Q.  :
KELLY,                              :
                                    :
                Defendants.      :
................................................................ x

HAIGHT, Senior District Judge:

Plaintiffs Craig R. Nazzaro and Richard Doran filed a complaint in the Supreme Court of

the State of New York, New York County against defendants Scott Balber, Kelly & Balber, LLP,

The Kelly Group P.C. (successor-in-interest to Kelly & Balber, P.C.), and John Q. Kelly

(collectively "the Balber attorneys"), alleging various claims for legal malpractice. Defendants

filed a notice of removal to this Court. Plaintiffs timely moved to remand the case to state court.

In a prior opinion reported at 2005 WL 1251785 (S.D.N.Y. May 25, 2005), familiarity with

which is assumed, I denied plaintiffs' motion to remand. Defendants now move pursuant to

Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint for failure to state a claim upon which

relief can be granted.

## I. BACKGROUND

Defendants in this action were formerly plaintiffs' counsel in an action in this Court

captioned *Augienello v. Coast-to-Coast Fin. Corp.*, No. 01 Civ. 11608 (S.D.N.Y.). Opinions

rendered in that case are reported at 2002 WL 1822926 (S.D.N.Y. Aug. 7, 2002) ("*Augienello*

*I*"), *aff'd*, 64 F. App'x 820 (2d Cir. May 9, 2003) ("*Augienello II*").  Plaintiffs in this action were also plaintiffs, again represented by defendants as their counsel, in a second action commenced in this Court, *Augienello v. Federal Deposit Ins. Corp.*, No. 02 Civ. 4317, which was related to 01 Civ. 11608.  Opinions in that action are reported at 310 F. Supp. 2d 582 (S.D.N.Y. March 25, 2004) ("*Augienello III*") and 2004 WL 965918 (S.D.N.Y. May 5, 2004) ("*Augienello IV*").  Familiarity with all these opinions is assumed.  However, in order to place plaintiffs' claims that defendants committed legal malpractice in the underlying actions in context, it is necessary to describe those actions in detail.  The descriptions which follow are based primarily on the cited opinions.

## A.     S.D.N.Y. No. 01 Civ. 11608

Plaintiffs in this initial action, which included the plaintiffs in the present malpractice action, were former employees of a non-party, Superior Bank FSB ("Superior").  Superior was subject to regulation by the Federal Deposit Insurance Corporation ("FDIC").  On July 27, 2001, Superior was closed by the federal Office of Thrift Supervision ("OTS").  The FDIC was then appointed receiver of Superior.

On July 1, 1997, the plaintiffs in 01 Civ. 11608 had entered into written employment agreements with Superior.  Certain Superior employees, including the present plaintiff Nazzaro, also received riders to their employment agreements.  The agreements provided for the payment of salary, incentive compensation monies, deferred compensation monies, and continued compensation payments for stated periods of time in the event of an involuntary termination of the plaintiffs' employment.  The riders provided for the payment of additional deferred monies. The plaintiffs began to receive deferred compensation payments on July 31, 2000, prior to OTC's closing of Superior and the appointment of FDIC as receiver on July 27, 2001.  While

plaintiffs received additional payments of deferred monies after July 27, 2001, those payments ultimately ceased. Plaintiffs commenced their action in 01 Civ. 11608 on December 20, 2001. The case was assigned to District Judge Sweet.

Plaintiffs' complaint named one corporate defendant, six named individual defendants, and 100 "John Doe" defendants. Superior was not named as a defendant. The corporate defendant was Coast-to-Coast Financial Corp. ("CCFC"), which plaintiffs alleged formed an Employee Retirement Income Security Act ("ERISA") plan to provide retirement income to employees of Superior. The six identified individual defendants were named Dworman, Pritzker, Stephenson, Kurs, Sexton, and Halleran. It is apparent that there was a close intercorporate relationship between CCFC and Superior. That relationship is evidenced by plaintiffs' employment agreements with Superior, in which involuntary termination of employment was defined to include a "change of control event" that "results in the reduction of the aggregate ownership interests of the then-existing CCFC investors in Superior to less than 50%." *Augienello I*, 2002 WL 1822926, at *1. In addition, the six named individual defendants included individuals who were officers of both CCFC and non-party Superior Holdings, Inc. ("SHI"), a subsidiary of CCFC, or were members of the boards of directors of both CCFC and Superior, or were officers of both CCFC and SHI.

Plaintiffs' complaint, drafted by the Balber attorneys, stated three claims for relief. First, plaintiffs claimed the defendants were beneficiaries of Superior's ERISA plan and that the defendants breached their fiduciary duties to plaintiffs under that plan. Second, the complaint alleged that CCFC, Dworman and Pritzker breached the employment contract that plaintiffs had entered into with Superior. Third, plaintiffs claimed that CCFC, Dworman, and Pritzker were

unjustly enriched by taking money from the ERISA plan and by unjustly using the plaintiffs' labor.

The defendants moved to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6). Judge Sweet granted the motion in *Augienello I*. His opinion posed the governing issue as follows:

> The parties agree that a central question underlying the instant motion is whether the plaintiffs had rights to continued deferred compensation or severance pay that had already "vested" prior to the appointment of the FDIC as receiver for Superior. Defendants contend that the plaintiffs' contractual rights to future deferred compensation and severance payment had not vested prior to the institution of the receivership, thereby precluding recovery. Plaintiffs, by contrast, argue that the rights vested on the date that the Employment Agreements and the accompanying riders were executed.

2002 WL 1822926, at *2.

Judge Sweet dismissed plaintiffs' complaint, holding that "the provisions of [12 C.F.R.] Section 563.39, as incorporated in plaintiffs' Employment Agreements, [were] sufficient for purposes of [Fed. R. Civ. P.] Rule 12(b)(6) to dismiss plaintiffs' claims." *Augienello I*, 2002 WL 1822926, at *5. 12 C.F.R. § 563.39 is one of a number of federal regulations governing employment contracts entered into by savings associations subject to federal oversight. Each of the plaintiffs' employment contracts stated: "All obligations under this Agreement shall be terminated pursuant to 12 C.F.R. § 563.39(b)(5) . . . when the Bank is determined by the Director of the OTS to be in an unsafe or unsound condition . . . ." *Augienello I*, 2002 WL 1822926, at *3. The contracts also provided that "obligations under this Agreement shall terminate as of the date of" any "default, as defined in . . . 12 U.S.C. § 1813(x)(1)" or "at the time the [FDIC] enters into an agreement to provide assistance to or on behalf of the Bank." *Id.* The contracts

explicitly exempted "vested rights" from termination.  *Id.*  Judge Sweet held that pursuant to section 563.39, read together with the terms of plaintiffs' employment contracts, plaintiffs' contracts automatically terminated when the FDIC placed Superior into receivership.  Therefore, he reasoned, plaintiffs would be entitled to their contractual benefits only if those benefits had "vested."  Based on the terms of plaintiffs' employment agreements, Judge Sweet concluded that plaintiffs' rights had not vested and consequently they were not owed deferred compensation or severance pay.  *Id*. at *3-*5.

Represented by counsel other than the Balber attorneys, plaintiffs appealed from Judge Sweet's decision. Affirming the dismissal of the complaint by summary order, the Second Circuit said that "[w]e agree, for substantially the same reasons as those given by the district court, that according to the terms of the contract the plaintiffs did not have any vested rights at the time the contracts terminated."  *Augienello II*, 64 F. App'x at 821.  The Second Circuit noted that "[o]n appeal, the plaintiffs have also argued that even if defendants did not violate the express terms of the contracts, they violated the implied covenant of good faith and fair dealing."  *Id*. at 822.  Because the plaintiffs had not included that claim in their complaint, asserting it for the first time on appeal, the court of appeals declined to consider it.  *Id.*

**B.     S.D.N.Y. No. 02 Civ. 4317**

Meanwhile, just prior to the district court's decision in *Augienello I*, plaintiffs had filed a second complaint in this Court, No. 02 Civ. 4317 (S.D.N.Y.), based on the same underlying facts.  That complaint was drafted by the Balber attorneys. The case was assigned to Judge Sweet as related to No. 01 Civ. 11608.  In that action, plaintiffs asserted claims not against CCFC or the individuals involved, but against the FDIC, as receiver for Superior, due to the FDIC's repudiation of plaintiffs' employment agreements and refusal to remit previously earned

compensation.  *See* Plaintiffs' Amended Complaint, dated Nov. 5, 2003, ¶¶ 1-5, found in Defendants' Memorandum of Law in Opposition to Motion to Remand, Mar. 10, 2005, Ex. 4. Plaintiffs asserted that their claims arose under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821 *et seq.  Id.* ¶ 13.

The parties agreed that further proceedings in plaintiffs' action against the FDIC would be deferred until after the disposition of *Augienello II*, which the Second Circuit decided on May 9, 2003.  After the Second Circuit's ruling, the Balber attorneys sought and obtained the Court's permission to withdraw as counsel for plaintiffs in 02 Civ. 4317.  Plaintiffs, now proceeding  *pro se*, filed an amended complaint in that action which was identical to their original complaint except for the addition of a new claim alleging a cause of action against the FDIC-receiver for breach of its asserted duty of good faith and fair dealing in its dealings with plaintiffs.

The FDIC moved to dismiss plaintiffs' amended complaint in 02 Civ.  4317 pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief could be granted.  Judge Sweet dismissed the complaint on the first ground. *Augienello III*, 310 F. Supp. 2d 582.  He reasoned that under FIRREA, which governed the action, subject matter jurisdiction existed only in the district in which the failed bank's principal place of business was located or in the United States District Court for the District of Columbia, and found that Superior's principal place of business was in Illinois.  In consequence, subject matter jurisdiction did not lie in the Southern District of New York.

Plaintiffs, still appearing *pro se*, moved under Local Rule 6.3 and Rule 60(b), Fed. R. Civ. P., for reconsideration of and relief from the opinion in *Augienello III* or for an order under 28 U.S.C. § 1631 transferring the case to the District of Columbia, where subject matter jurisdiction would exist.  Judge Sweet denied that motion in its entirety.  *Augienello IV*, 2004

WL 965918. As for Local Rule 6.3, he denied reconsideration because plaintiffs failed to demonstrate controlling decisions or factual matters put before the Court on the underlying motion that might have altered the result, as required to succeed on a motion under the Rule. *Id.* at *1-*2. As for Rule 60(b), Judge Sweet denied relief from the judgment of dismissal in *Augienello III* because "[t]he heart of the underlying decision is that Superior's principal place of business was in Illinois," nothing submitted by plaintiffs "has shown that this conclusion was incorrect," and "[p]laintiffs have therefore not met their burden of showing that any exceptional circumstances merit a grant of relief under Rule 60(b)." *Id.* at *3. As for plaintiffs' request for an order transferring the case to the District of Columbia, Judge Sweet held:

> Under Plaintiffs' Rule 60(b) motion, the request could only be considered under exceptional circumstances. A district court may transfer an action after a finding of want of jurisdiction "if it is in the interest of justice." 28 U.S.C. § 1631. However, the Second Circuit has held that it is not in the interest of justice *to transfer a meritless claim* under § 1631. In its brief on the underlying motion, the FDIC demonstrated convincingly that Plaintiffs' contract claim had been considered by this Court in the related action and that decision was affirmed by the Second Circuit. Further, the cause of action for breach of an implied covenant of good faith and fair dealing *would not be enforceable as the federal regulations which terminated the Defendant's obligations under the contract preempt state law in the area of savings and loan industry regulation.* Therefore, no exceptional circumstances exist which would justify transferring this action.

*Id.* at *4 (emphasis added) (citations omitted).

## C.    The Present Action

Plaintiffs did not appeal from the district court's orders in *Augienello III* and *Augienello IV*. Instead, now represented by new counsel, they commenced the present action for legal malpractice against the Balber attorneys, their former counsel. The gravamen of plaintiffs' complaint is that during the period they represented plaintiffs, the Balber attorneys failed to

render competent legal service, as specifically described in Part III, *supra*. Defendants removed the action from state court to this Court, and now move to dismiss the complaint under Rule 12(b)(6).

## II. STANDARD AND SCOPE OF REVIEW

On a motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir. 1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

On a motion to dismiss, a district court must accept a plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283 (1986), and such factual allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Moore's Federal Practice* § 12.34(1)(B) (3d ed. 2001). Although the seminal case of *Conley v. Gibson* "permits a pleader to enjoy all favorable inferences from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations." *Electronics*

*Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (citation and internal quotations marks omitted).

Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *See Cortec Indus., Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 112 S.Ct. 1561 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982).

Rule 12(b)(6) "does not give the district court authority to consider matters outside the pleadings; it simply delineates the procedures which must be followed in testing the legal sufficiency of a complaint." *LaBounty*, 933 F.2d at 123. Should a movant wish to "test the factual underpinnings of the complaint," it should "submit proper evidence outside the pleadings and move for summary judgment under Rule 56." *Id.*

Notwithstanding the generality of that rule, in the case at bar plaintiffs' complaint makes reference to the prior judicial opinions, *Augienello I-IV*, that form the critical factual and legal background for their claims of legal malpractice. *See* Complaint, ¶¶ 13-16. In considering defendants' motion to dismiss under Rule 12(b)(6), I shall refer to and consider those opinions, as I am entitled to do without converting the motion into one for summary judgment under Rule 56. *See Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 472 n.8 (S.D.N.Y. 2001) ("The Court can take judicial notice of this opinion without converting this motion to dismiss into a summary judgment motion."), *citing and quoting Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such

litigation and related filings."). *See also Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 626 (D.N.J. 2005) ("Here, because Plaintiff refers in her complaint to the numerous opinions and orders issued by various courts in connection with these matters, this Court may consider those opinions and orders without converting this Rule 12(b)(6) motion into a motion for summary judgment."), *citing In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Defendants have also referred to these opinions in their moving papers. They have not, however, submitted any evidence outside the pleadings.

There is one rather anomalous submission. The brief of plaintiffs' counsel of record, Andrew Lavoott Bluestone, in opposition to defendants' motion to dismiss annexes an "affidavit" of another attorney, Charles E. Stiene, who does not appear to be professionally associated with Mr. Bluestone. Mr. Stiene's submission, which is more a memorandum of law than an affidavit, opines on the merits of plaintiffs' case, and analyzes in particular plaintiffs' theories based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and a breach of covenant of good faith and fair dealing. While recognizing that the present posture of the case is a motion to dismiss, plaintiffs submit Stiene's affidavit as a self-styled "act of caution," though "without conceding an obligation." Plaintiff's Brief at 9. I understand this to mean plaintiffs submit the Stiene affidavit to be considered in the event, and only in the event, that I convert defendants' motion to dismiss into a motion for summary judgment. In their reply brief, defendants respond to Stiene's affidavit with their own analysis of plaintiffs' RICO and breach of covenant theories.

I see no reason for concern about whether the Court's consideration of the Stiene "affidavit" would require converting this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. As noted, Mr. Stiene's submission is the practical equivalent of a legal

brief.[1]  I will consider its arguments within the context of defendants' Rule 12(b)(6) motion to dismiss plaintiffs' complaint.

## III.  DISCUSSION

### A.    The Law Governing Legal Malpractice

Plaintiffs charge defendants, their former attorneys, with legal malpractice.  New York law governs.  "The elements of legal malpractice under New York law are (1) a duty, (2) a breach of the duty, and (3) proof that the actual damages were caused by the breach of the duty." *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 118 (2d Cir. 2004).  The duty owed by an attorney to his client is to avoid acting negligently, which is defined as a failure by the attorney "to exercise that degree of skill commonly exercised by an ordinary member of the legal community." *Marshall v. Nacht*, 172 A.D.2d 727, 728 (2d Dep't 1991).  The element of causation is established if, but for the attorney's negligence, the client would not have suffered the actual damages proved.  *Stiles*, 315 F.3d at 118 ("Stiles' malpractice [failure to perfect a timely appeal] is the proximate cause of Ocean Ships' damages if, but for Stiles' failure to perfect the Initial Appeal, the Appellate Division would have reversed the finding of personal jurisdiction over Ocean Ships.").  The causation element requires the trial court in the malpractice action to determine what the court in the underlying action "would have done, using the same standards [that court] would have applied."  *Id*.

### B.    Plaintiffs' Claims Against the Balber Attorneys

In the case at bar, the legal services the Balber attorneys rendered to plaintiffs consisted principally of drafting and filing two complaints: against the CCFC and the individual

---

[1]  It is not clear why Mr. Bluestone, plaintiffs' counsel of record, did not write this legal analysis himself.

defendants in 01 Civ. 11608 (*Augienello I*), and against the FDIC in 02 Civ. 4317 (*Augienello III*).  The present complaint alleges four causes of action for legal malpractice against defendants.  The pleading is not a model of clarity.  The first and second causes of action appear to relate to 01 Civ. 11608, and the third and fourth to 02 Civ. 4317.

Plaintiffs allege for their first cause of action that:

Defendants negligently failed to render competent legal service, negligently failed to initiate proper legal proceedings, negligently failed to state a cause of action, failed to amend the complaint within appropriate time limits, failed to bring an action sounding in fraud, although there were adequate factual circumstances to bring the cause of action in fraud, failed to cross-move to amend, failed to seek leave to amend the complaint, failed to allege a breach of a covenant, failed to bring an action sounding in RICO, although there were adequate factual circumstances to bring the cause of action and failed to bring an action in State Court.

Complaint, ¶ 29.  Paragraphs 30 and 31 of the complaint allege respectively that "but for" defendants' failures, "there would have been a better, different or successful outcome for plaintiffs," and "plaintiffs would have had a recovery."  The second cause of action is a reprise of the first, cast in terms of breach of contract rather than negligence.

The third cause of action alleges in paragraph 41 that "[b]ecause the District Court in which the action was brought by defendants lacked subject matter jurisdiction, the matter was dismissed, and plaintiffs were damaged."  *Id.* 41.  This cause of action does not specifically allege which "action" plaintiffs are talking about, but it must be the action against the FDIC.[2] Paragraph 42 alleges that defendants "negligently failed to initiate proper legal proceedings in a proper court or a court which actually had subject matter jurisdiction"; paragraph 43 alleges that "[b]ut for defendant's [*sic*] negligence, the action would have been brought in the correct court which had subject matter jurisdiction, and plaintiffs would have been successful in prosecuting

---

[2] The fourth cause of action specifically refers to the FDIC in paragraph 46.

their clams for lost deferred compensation, lost retirement monies, and lost compensation." The fourth cause of action is a reprise of the third, again cast in terms of breach of contract rather than negligence.

Plaintiffs' complaint charging defendants with legal malpractice consists for the most part of "conclusory allegations or legal conclusions masquerading as factual conclusions," to quote Professor Moore's trenchant phrase, the truth or accuracy of which I need not accept for the purpose of Rule 12(b)(6) analysis. *See* Part II, *supra*. Plaintiffs' theory of the case is somewhat clarified by their brief, as supplemented by the Stiene affidavit. Of course, neither document forms a part of the complaint, which for Rule 12(b)(6) analysis stands or falls alone. But plaintiffs' brief and the Stiene affidavit are instructive on this motion because they facilitate evaluation of whether, if the present complaint fails to state a claim upon which relief can be granted, leave should be granted plaintiffs to amend it.

Plaintiffs' brief makes it plain that although following the filing of the complaints defendants continued to represent plaintiffs in this Court throughout the first underlying action, 01 Civ. 11608, and up until their withdrawal as counsel in the second, 02 Civ. 4317, the gravamen of their legal malpractice claim is that defendants did not properly draft the complaints, certainly in the first action and perhaps in the second (plaintiffs' theory is not entirely clear). Plaintiffs say that "[t]his attorney malpractice action is premised on defendant's failure to allege certain causes of action," Brief at 8. For that proposition plaintiffs' brief relies upon and summarizes Stiene's affidavit:

> There he opines that plaintiff's [*sic*] cases did indeed have merit, had the correct causes of action been alleged. In this particular case, merit has come to mean that a cause of action for breach of a covenant of good faith and fair dealing would survive the

13

> receivership of Superior Bank, and that a cause of action in RICO
> would be viable.

*Id* at 9.

## C.   The Stiene Affidavit

Mr. Stiene's legal arguments expressed in his affidavit assert in essence that the Balber attorneys could have pleaded on plaintiffs' behalf meritorious claims for (1) breach of an implied contractual covenant of good faith and fair dealing, and (2) civil RICO violations, and that their failure to do so damaged plaintiffs. I will consider Stiene's views in that order.

### 1.   *The Covenant of Good Faith and Fair Dealing*

Stiene says that the Second Circuit "found" in *Augienello II* that "[i]t is a fundamental principle of law that in every contract there exists an implied covenant of good faith and fair dealing. Furthermore, each contract contains an implicit understanding that neither party will intentionally do anything to prevent the other party from carrying out his part of the agreement." Stiene Affidavit, ¶ 5. While the Second Circuit used that language, *Augienello II,* 64 F. App'x at 822, it was not a "finding"; the court did no more than quote an opinion cited by plaintiffs in their appellate brief following the dismissal in *Augienello I*. But the validity of the general proposition may be acknowledged.

Plaintiffs argued in the court of appeals that the covenant barred the individual defendants from relying upon the termination of the employment agreements by operation of law because the defendants themselves "were the ones who proximately caused the failure of Superior, and are the alter egos of Superior." *Id*. The Court of Appeals noted that corporate veil piercing could not arise in the case because, as Judge Sweet held and the Second Circuit agreed, no claim lay against Superior as a matter of law. *Id*. at n.1. In those circumstances, the Court of

Appeals concluded, "the only remaining argument for a claim against Superior is for a breach of the implied covenant of good faith and fair dealing." *Id.* But the Second Circuit declined to reach that argument because "[n]owhere in the complaint is there any mention of a duty of good faith and fair dealing, or allegation that the defendants breached such a duty"; nor did plaintiffs seek "leave in the district court to amend the complaint to add such a claim," *id.*

Stiene expresses the opinions that the Balber attorneys committed legal malpractice by failing to plead a claim for breach of the covenant in the complaint in 01 Civ. 11608, or urging Judge Sweet to construe the complaint so as to include it, Affidavit ¶ 6, and that plaintiffs "had a good and meritorious claim for breach of good faith and fair dealing," *id.* ¶ 25. The "facts," such as they are, that Stiene cites in support of the latter assertion appear in paragraph 10 of his Affidavit. Stiene says that "[t]he cause of action for breach of covenant of good faith and fair dealing rested on the acts of Coast to Coast" (without identifying the individual actors); that plaintiffs were told (again by unidentified individuals) that "the deferred compensation was actually funded and placed in an insurance annuity plan"; and that "internal FDIC Inspector General reports state that 'based upon our review of the failure of Superior Bank, it appears that some of the decisions of Superior Bank rose to the level of insider abuse.'"[3]

**2.    *The RICO Claim***

Stiene says in his affidavit at paragraph 12 that "[a] complaint against the ownership of Superior Bank would have had merit," identifies wire fraud and mail fraud as the requisite predicate acts under the RICO statute, 18 U.S.C. §§ 1961-1968, *id.* ¶¶ 12-13, and opines that "a

---

[3] One searches plaintiffs' complaint in vain for any such factual assertions. As stated previously in text, I consider the contents of the Stiene affidavit solely for the purpose of evaluating whether plaintiffs are in a position to allege viable claims against the Balber attorneys, in the present complaint or in an amended one.

RICO claim would have survived 12 C.F.R. § 563.39(b)(5) and would have survived a motion to dismiss," *id*. ¶ 15.  Stiene cites no authorities for these legal conclusions.  He summarizes the factual bases for them at paragraph 13 of his affidavit:

> a.  Existence of a scheme to defraud: Compensation contracts that were stated to be funded, but were not, falsified financial documents indicating the financial condition of Superior Bank FSB, and utilization of Bank employees for unrelated business with no arms-length compensation;
>
> b.  Defendant's [*sic*] knowing participation in the scheme: The ownership and board of the bank informed plaintiffs on a continuous basis that the financial condition of the bank was excellent, when it was not; plaintiffs informed that deferred compensation was actually vested "in an insurance company" when manifestly it was not; and that the bank was to be used as a trust fund for the families of ownership and that no capital would be removed; the bank descended into receivership.
>
> c.  The use of mail or wires in that scheme.

### 3.       *The Gravamen of the Stiene Affidavit*

Stiene is justly critical of the Balber attorney's filing the complaint against the FDIC in 02 Civ. 4317 in the wrong district.  But this act of legal malpractice (accepting that characterization for purposes of analysis) cannot impose liability upon the Balber attorneys unless their selection of an improper venue damaged plaintiffs.  That nowhere appears. Plaintiffs and Stiene do not claim, nor could they, that the Balber attorneys negligently failed to assert viable claims *against the FDIC in its own right*.  The FDIC entered this case as the receiver of Superior, pursuant to the governing provisions of FIRREA.  One of the powers provided by FIRREA to the FDIC as Superior's receiver was the power to determine claims against Superior and to disallow claims not proven to the FDIC's satisfaction.  *See* 12 U.S.C. § 1821(d)(3)(A) and (d)(5)(D).  "A fundamental requirement of the statutory claims procedures

created by FIRREA is that all claimants against the institution must file their claims with the receiver." *Augienello III*, 310 F. Supp. at 588. A claimant dissatisfied by the FDIC's disallowance of its claim may seek *de novo* determination in an appropriate federal district court. The Balber attorneys filed plaintiffs' complaint in the wrong district court, but that mistake did not damage plaintiffs if they had no viable claim against Superior in any event. In other words, there can be no causal connection between the improper selection of the district in which to sue the FDIC *standing alone* and damage to plaintiffs.

In consequence, plaintiffs' claim for legal malpractice must be, and the Stiene affidavit argues in essence, that the Balber attorneys should have pleaded in the complaint in 01 Civ. 11608 against CCFC and the six individual defendants claims for breach of the implied covenant of good faith and fair dealing and RICO violations; and should have pleaded those claims against Superior in the initial complaint in 02 Civ. 4317 against the FDIC.[4]

**D.  Can Plaintiffs Allege Claims Upon Which Relief Can Be Granted?**

As noted in Part III.A., an essential element of an action for legal malpractice is that the plaintiff prove actual damages were caused by the attorney's negligence, a question that the malpractice court must resolve by determining what the court in the underlying action would have done if the attorney had conducted plaintiff's case properly: or, to put the proposition more precisely, would the plaintiff have won his case? That is the meaning and effect of the "but for" test.

In the case at bar, on this motion to dismiss under Rule 12(b)(6), I must consider the allegations of plaintiffs' complaint against the Balber attorneys, viewed in the context of the

---

[4]  A claim for breach of the covenant was included in plaintiffs' amended complaint in 02 Civ. 4317, which plaintiffs filed *pro se* after the Balber attorneys withdrew from the case.

opinions in *Augienello I-IV*, and decide if claims by plaintiffs for breach of the covenant of good faith and fair dealing and for RICO violations, pleaded against the particular defendants and at the times plaintiffs allege the Balber attorneys should have pleaded them, would have prevailed. If it is clear that as a matter of law those claims, thus pleaded, would have been rejected, then it follows that plaintiffs have not stated a claim for legal malpractice upon which relief can be granted, and this motion must be granted. Again, I will discuss these two claims in that order.

**1.**      ***The Covenant of Good Faith and Fair Dealing***

Plaintiffs entered into their employment agreements with Superior. As a matter of law, they could have no viable claim against Superior for breach of the implied covenant of good faith and fair dealing.

The covenant is a creation of the common law of contract. The OTC closed Superior and the FDIC was appointed receiver in July 2001. Plaintiffs filed their complaint in 01 Civ. 11608 in December 2001. By that time, the FIRREA regulatory and statutory scheme governing Superior's affairs, including claims against the bank, was in effect. Although plaintiffs' brief and Mr. Stiene's affidavit avoid the fact, in *Augienello III* Judge Sweet did more than dismiss plaintiffs' complaint in 02 Civ. 4317 against the FDIC as Superior's receiver because it had been filed in the wrong district. He also denied plaintiffs' motion to transfer the action to the District of Columbia, where subject matter jurisdiction would have existed, holding explicitly that a claim against Superior for breach of the covenant of good faith and fair dealing was "meritless" because "the cause of action for breach of an implied covenant of good faith and fair dealing would not be enforceable as the federal regulations which terminated [Superior's] obligations under the contract preempt state law in the area of savings and loan industry regulations." *Augienello IV*, 2004 WL 965918, at *4.

Arguably Judge Sweet's holding constitutes the law of the case in the present malpractice action, but in any event I agree with his holding. It follows that plaintiffs could not have been damaged by the Balber attorneys' failure to include in the 01 Civ. 11608 complaint or the initial 02 Civ. 4317 complaint a claim against Superior for breach of the covenant. That claim was asserted by plaintiffs *pro se* in the amended complaint in 02 Civ. 4317, but rejected by Judge Sweet on the merits.

As for CCFC and the six individuals named as defendants in 01 Civ. 11608, as a matter of law plaintiffs could have no viable claim against any of them for breach of the implied covenant of good faith and fair dealing. As the case quoted by Mr. Stiene reflects, the covenant exists between *parties* to a contract. None of these defendants was a party to the plaintiffs' contracts, which were with Superior. It follows that plaintiffs could not have been damaged by the Balber attorneys' failure to include in the pleading they drafted a claim against any of these defendants for breach of the covenant.

## 2.    *RICO*

This aspect of the case poses the question whether, as a matter of law, the Balber attorneys could have pleaded a viable Rico claim against any of the parties in the underlying litigation. If that question is answered in the negative, then it follows that the Balber attorneys did not commit legal malpractice in failing to plead a RICO claim.

The Stiene affidavit at paragraph 12 asserts that "[a] complaint against the ownership of Superior Bank would have had merit." Paragraph 13b of the affidavit, undertaking to describe the participants in a fraudulent scheme, refers to "the ownership and board of the bank." Stiene does not identify the entities or individuals included in these references. Given the

interrelationships described in Part I, *supra*, I interpret Stiene's phrases to mean CCFC and the six individual defendants in 01 Civ. 11608.

While their submissions are not precise, plaintiffs apparently base their proposed RICO claim on 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "To establish a claim for a civil violation of section 1962(c), a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

The Second Circuit cases establish the proposition that to plead or prove a civil RICO violation, the "person" and the "enterprise" referred to in section 1962(c) must be distinct. *Riverwoods Chappaqua Corp. v. Midland Marine Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994), which held that the requisite distinction did not exist where a bank and its employees were accused of violating RICO by defrauding a borrower, is instructive, and I quote the opinion at some length:

> Under [section 1962(c)], the RICO "person" must conduct the affairs of the RICO "enterprise" through a pattern of racketeering activity. We have determined that the person and the enterprise referred to must be distinct . . . . [T]he plain language of section 1962(c) clearly envisions separate entities, and the distinctness requirement comports with legislative intent and policy . . . .
>
> Factually, this case is similar to *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440-41 (5th Cir.) (per curiam), *cert. denied,* 438 U.S. 1032 (1987). There, the plaintiffs had alleged that the defendants, a bank, its holding company, and three employees conspired to defraud plaintiffs in connection with a loan agreement. The alleged enterprise was an association-in-fact of the bank, its holding company, and its employees. The alleged predicate acts were acts of mail fraud, committed when loan statements were sent to the plaintiffs. The court concluded that there was no evidence that the bank, its holding company, and its

> employees were associated in any manner *apart from the activities of the bank*. In particular, the mailing of the loan statement clearly was an activity of the bank.

30 F.3d at 344 (citations and internal quotation marks omitted) (emphasis added).

The Second Circuit's holding in *Riverwoods* and its citation with approval of the Fifth Circuit's holding in *Atkinson* are dispositive of the present plaintiffs' suggested RICO claim. Plaintiffs' theory is that the defendants, CCFC and the six individuals constituting the "ownership and board" of Superior Bank, defrauded the plaintiffs of their compensation as employees of the bank. Plaintiffs offer no evidence, and could not, that the defendants "were associated in any manner apart from the activities of the bank." *Riverwoods*, 30 F.3d at 344. It follows that plaintiffs are unable to show an enterprise distinct from the persons alleged to have participated in a fraudulent scheme, and a RICO claim would not have been available to them as a matter of law.[5] Consequently, the Balber attorneys did not commit legal malpractice by not asserting one.

### E.      Should Plaintiffs be Granted Leave to Replead?

A complaint alleging legal malpractice should contain sufficient allegations concerning a plaintiff's underlying claim to demonstrate, if the allegations are accepted, that the plaintiff would have prevailed on that claim, but for his attorney's negligence. Judged by that standard, the barebones and conclusory complaint in the case at bar is wholly inadequate. For example: in a civil RICO claim, "all allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)," *First Capital Asset Mgmt., Inc.*

---

[5]  The defendants at bar contend that a RICO claim would not have been viable for additional reasons. In the view I take of the case, I need not reach those arguments.

*v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004), requirements which the present complaint ignores.

Not infrequently, when a fraud claim is dismissed for failure to comply with Rule 9(b), a refinement in fraud cases of a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, the district court gives the plaintiff leave to replead his complaint. Such leave lies within the discretion of the district court. I decline to grant leave to replead in this case, because, for the reasons stated *supra*, it is clear that plaintiffs cannot plead a viable legal claim for legal malpractice against the Balber attorneys.[6]

## IV. CONCLUSION

The Clerk of the Court is directed to dismiss the complaint with prejudice. Leave to replead is denied.

It is SO ORDERED.

Dated: New York, New York
September 16, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] As discussed in text, I understand plaintiffs to be arguing only that the Balber attorneys committed legal malpractice by failing to assert a claim for breach of the implied covenant of good faith and fair dealing, and a civil RICO claim. Plaintiffs could not assert a malpractice claim arising out of Judge Sweet's decision in *Augienello I* rejecting plaintiff's contractual claims against Superior for deferred compensation and severance pay, a dismissal affirmed by the Second Circuit in *Augienello II*. The Balber attorneys asserted those claims in a timely fashion and argued in support of them. Plaintiffs in the case at bar do not point to any particular ways in which the Balber attorneys could have done better. We are not yet at the stage where every attorney who loses his case is *ipso facto* guilty of legal malpractice.